# SEALED

FILED BY _KP_ D.C.

APR 04 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

---

IN RE MATTER OF THE *EX PARTE*
APPLICATION OF BANCO DE LOS
TRABAJADORES FOR AN ORDER TO
TAKE DISCOVERY UNDER 28 U.S.C.
§ 1782

          Applicant.

Case No. _____

---

### *EX PARTE* APPLICATION FOR AN ORDER TO TAKE DISCOVERY
### UNDER 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... II

TABLE OF AUTHORITIES ....................................................................... IV

I.   INTRODUCTION ................................................................................. 1

II.  JURISDICTION AND VENUE ............................................................ 3

III. PARTIES .............................................................................................. 3

A.   *Bantrab* ................................................................................................ 3

B.   *Hidalgo Socorro* ................................................................................. 4

IV.  RELIEF REQUESTED ......................................................................... 4

V.   MEMORANDUM OF LAW .................................................................. 5

A.   *Requirements for Discovery under 28 U.S.C. § 1782* ........................ 5

B.   *The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782* ........... 6

     (1)   *Socorro Resides in, or is Otherwise Found in, the District* ................. 6

     (2)   *The Request Seeks "Evidence" within the Meaning of 28 U.S.C. § 1782* ......... 7

     (3)   *The Evidence Requested is "For Use" in the Guatemala Proceedings, Each of which is a "Foreign Proceeding"* .................................. 8

     (4)   *Bantrab is an "Interested Person"* ................................................... 10

C.   *All the Intel Discretionary Factors Favor Granting the Application* .................... 11

     (1)   *The Discovery Target has evaded Guatemalan Courts and Prosecutors* ......... 11

     (2)   *The Nature and Receptivity of the Foreign Tribunal to the Requested Discovery* ........................................................................... 11

     (3)   *Bantrab is Not Circumventing any Foreign Law Proof-gathering Restrictions* 12

     (4)   *The Discovery Requests are Not Unduly Intrusive or Burdensome* ............... 13

D.   *Under this Court's Local Rules, 28 U.S.C. § 1782 Applications Are Typically Filed Ex Parte and Restricted from Public View* ........................ 13

**VI. CONCLUSION** ........................................................................................................... **15**

# TABLE OF AUTHORITIES

### Cases

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*
   747 F.3d 1262 (11th Cir. 2014) ............................................................................... 5, 7, 9

*Application of Furstenberg Fin. SAS v. Litai Assets LLC*
   877 F.3d 1031 (11th Cir. 2017) ................................................................................. 8, 10

*Gushlak v. Gushlak*
   486 F. App'x 215 (2d Cir. 2012) ...................................................................................... 14

*In re Accent Delight Int'l Ltd.*
   869 F.3d 121 (2d Cir. 2017) ............................................................................................... 8

*In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*
   No. 08-20378-MC, 2011 WL 181311 (S.D. Fla. Jan. 19, 2011) ..................................... 13

*In re Application of Mesa Power Grp., LLC*
   878 F. Supp. 2d 1296 (S.D. Fla. 2012) ........................................................... 6, 11, 12, 13

*In re Bernal*
   No. 18-21951-MC, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) ..................................... 8

*In re Braga*
   272 F.R.D. 621 (S.D. Fla. 2011) ....................................................................................... 13

*In re Clerici*
   481 F.3d 1324 (11th Cir. 2007) ........................................................................ 5, 6, 11, 14

*In re Furstenberg Fin. SAS*
   No. 16-MC-60266, 2016 WL 10707012 (S.D. Fla. July 27, 2016) .................................... 8

*In re Kreke Immobilien KG*
   No. 13 Misc. 110, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ...................................... 11

*In re MTS Bank*
   No. 17-21545-MC, 2017 WL 3276879 (S.D. Fla. Aug. 1, 2017) ..................................... 11

*In re Multiflora Int'l Ltd.*
   No. 20-mc-80193-DMR, 2021 WL 2662122 (N.D. Cal. June 29, 2021) ......................... 12

*In re N. Am. Potash, Inc.*
   No. 12-20637-CV, 2012 WL 12877816 (S.D. Fla. Nov. 19, 2012) ................................. 12

*In re Novoship (UK) Ltd.*
   No. 20-60876-MC, 2020 WL 3286308 (S.D. Fla. June 18, 2020) ..................................... 7

*In re O'Keeffe*
   660 F. App'x 871 (11th Cir. 2016) .................................................................................. 7

*In re Request for Int'l Judicial Assistance from the Norrkoping Dist. Court, Sweden*
   219 F. Supp. 3d 1061 (D. Colo. 2015)............................................................................ 7

*In re Trinidad & Tobago*
   848 F.2d 1151 (11th Cir. 1988) .................................................................................... 13

*Intel Corp v. Advanced Micro Devices, Inc.*
   542 U.S. 241 (2004).................................................................................................. passim

*ZF Automotive US, Inc. v. Luxshare, Ltd.*
   142 S. Ct. 2078 (2022)................................................................................................... 9

**Statutes**

28 U.S.C. § 1331 ............................................................................................................... 3

28 U.S.C. § 1391 ............................................................................................................... 3

28 U.S.C. § 1782 ......................................................................................................... passim

28 U.S.C. § 1782(a) ........................................................................................................ 3, 5

**Other Authorities**

Code of Penal Procedure of Guatemala, Decree Number 51-92, Article 116.- Civil Party.
   (Amended by Article 9 of Decree 32-96, Article 12 of Decree 103-96 and Article 15 of Decree
   79-97, all of the Congress of the Republic) ........................................................................ 8

Code of Penal Procedure of Guatemala, Decree Number 51-92, Article 117.- Aggrieved party.
   (Amended by Article 38 and 39 of Decree 21-2016 of the Congress of the Republic)............. 9

**Rules**

S. D. Fla. L. R. 5.4(d)...................................................................................................... 14

## I.    INTRODUCTION

Banco de los Trabajadores ("Bantrab") seeks an *Ex Parte* Order under 28 U.S.C. § 1782 authorizing it to take discovery from Hidalgo Socorro ("Socorro" or "Discovery Target")—a resident of the Southern District of Florida.[1] Bantrab seeks this discovery for use in proceedings before two Guatemalan courts: (1) the Juzgado de Primera Instancia de Extinción de Dominio ("the Guatemalan Forfeiture Court") and (2) the Juzgado Séptimo de Primera Instancia Penal, Narcoactividad y Delitos Contra el Ambiente ("the Guatemalan Criminal Court") (collectively, the "Guatemala Proceedings" or the "Foreign Proceedings").[2]

Bantrab is a special purpose banking institution with the mission of fostering the well-being of Guatemalan workers by promoting savings. To do so, Bantrab, among other things, provides special loans to Guatemalan workers. These include loans to cover their emergency needs, to purchase or repair homes or farms, or to help artisans and family businesses. It is the bank of the working people of Guatemala.

In 2012, three former high-ranking Bantrab officials[3] (the self-proclaimed "G3") and Hidalgo Socorro entered into an illicit agreement to take control of Bantrab through a kickback scheme. According to the illicit agreement, the G3 were to get a 50% stake in the company that, if everything went according to their secret plan, would own 80% of Bantrab's stock capital. To carry out the scheme, Socorro funneled $20 million into DHK Finance, Inc. ("DHK"), and used DHK to purchase preferred stock in Bantrab. DHK is wholly owned by Brumby Shipholding,

---

[1] A copy of the subpoena *duces tecum* Bantrab seeks to serve on Socorro is attached as Exhibit A.

[2] Case numbers 01175-2016-00017 and C-01079-2016-00158, respectively. A copy of orders from each court are attached as Composite Exhibit B.

[3] Sergio Hernandez, President of Bantrab's Board of Directors; Eduardo Liu, Director of the Board; and Ronald Garcia, Bantrab's General Manager.

S.A., a company owned by Socorro and Enoc Martinez. The G3 were then to manipulate the preferred stock dividends and pay back their share of the $20 million over four years.

Once the *Superintendencia de Bancos de Guatemala* (Guatemala's national bank regulator) ("SIB") learned about this scheme, it brought a case—later taken up by the *Fiscalía Especial Contra la Impunidad del Ministerio Público* (a national-level criminal prosecutor) ("the Guatemalan Prosecutor") and the *Fiscalía de Extinción de Dominio* ("Forfeiture Prosecutor")—against Socorro and the G3. The SIB accused Socorro and the G3 of fraud, conspiracy, and illegal association in the drafting, signing, and execution of the agreement with the G3.

The criminal complaint by the SIB alleged a series of irregularities and fraud in the sale and issuance of the Bantrab preferred shares to DHK. As a result, on April 6, 2016, the Guatemalan Forfeiture Court ordered the seizure and the suspension of property rights over DHK's preferred shares. The judicial order became effective on April 8, 2016. The Guatemalan Forfeiture Prosecutor continues to investigate the source of the $20 million that DHK used to purchase the preferred Bantrab stock.

Furthermore, the Venezuelan press and a representative from The Venezuelan National Assembly have alleged that the source of the $20 million is an illicit deal between Socorro and Petróleos de Venezuela, S.A. (the Venezuelan state-owned oil and natural gas company) ("PDVSA"), where Socorro, through his company, Brumby Shipholdings, sold tugboats to PDVSA at ten times their market value, through a scheme involving kickbacks and other payments. *See* Composite Exhibit C. Getting to the bottom of these issues remains critical for Bantrab in the Foreign Proceedings.

## II.   JURISDICTION AND VENUE

This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1782. Venue in this District is proper under 28 U.S.C. § 1391 because Socorro resides in this District.

## III.   PARTIES

### A.   *Bantrab*

Bantrab is a special purpose banking institution created by Decree Law 383 of 1965 of the Republic of Guatemala. As a financial institution, Bantrab is a highly regulated entity governed by its Ley Orgánica del Banco de los Trabajadores ("Ley Organica"), Bantrab's bylaws; the Ley de Bancos y Grupos Financieros; the Ley de Sociedades Financieras Privadas, Guatemala's laws governing private financial institutions, where applicable; and the laws of Guatemala generally.

From the beginning, Socorro, the G3, and DHK—beneficially owned by Socorro—concealed their illicit kickback scheme. Ignorant of DHK's true intentions, in August of 2013, Bantrab issued 15,655,000 preferred shares to DHK in exchange for $20 million. The SIB had authorized the sale of the preferred shares in May 2013.

The notorious, widely publicized proceedings against Socorro and DHK, combined with the illicit source of the funds used to invest in Bantrab, caused Bantrab severe reputational and economic damage. When news of these events became public on April 8, 2016, it created great uncertainty and unease among the bank's clients. There was a multi-million dollar outflow of deposits, jeopardizing the Bank's operations and the resulting payment of dividends (which are not guaranteed) to Bantrab's common shareholders—that is, the workers of Guatemala. *See* Composite Exhibit D.

3

Therefore, as further set forth below, and explicitly under Guatemalan law, Bantrab is an interested party with respect to the Guatemala Proceedings.

**B.      *Hidalgo Socorro***

Socorro, the subject of the requested discovery, is an individual who owns property and resides in this District. Since 2016, Socorro has been the subject of a criminal proceeding and an ongoing criminal investigation by the Guatemalan Prosecutor in the Guatemalan Criminal Court arising directly from his participation in the secret scheme with the G3 to purchase the preferred shares in Bantrab. Through this case, Guatemalan authorities are examining the legality of the agreement entered into by the G3, Socorro, and his company, DHK, and whether it reflects an intentional and concerted criminal act, as denounced by the SIB. Bantrab is "querellante" and "aggrieved" party in the proceedings.

Socorro is also DHK's president. DHK's shares are owned by Brumby Shipholding, a company owned by Hidalgo Socorro and Enoc Martinez. DHK is also the subject of a pending legal action in the Guatemalan Forfeiture Court and under investigation by the Forfeiture Prosecutor (its anti-money laundering unit), Case No. 01175-2016-00017. DHK is subject to the *Orden de Embargo, Secuestro y Suspensión de Derechos de Propiedad* from that court seizing DHK's Series "B" preferred shares and suspending all of its rights over the shares. That proceeding is still pending.

**IV.      RELIEF REQUESTED**

By this Application, Bantrab seeks permission to take discovery from Socorro into the source of the $20 million at the center of the two separate Guatemala Proceedings, as well as details about the G3 scheme, all for use in both of the Guatemala Proceedings, which is precisely the purpose of § 1782 discovery.

Bantrab is an interested party in the Guatemala Proceedings because DHK (beneficially owned by Socorro) is still a shareholder in the bank. DHK is a named party in the Forfeiture Court proceeding, its president is the subject of the Criminal Court proceeding, and its assets are frozen by the Criminal Court. For each year following 2015, Bantrab has continued to account for DHK's dividends by entering the approved dividends in its accounting records according to the standard procedures for financial institutions. Because DHK's preferred shared and accounts are frozen by order of the Guatemalan courts, no monies can be either withdrawn from or deposited to them. In the meantime, its reputation continues to be harmed by having DHK as a shareholder.

## V.    MEMORANDUM OF LAW

### A.    *Requirements for Discovery under 28 U.S.C. § 1782*

Section 1782 authorizes district courts to order persons located in the United States to produce discovery for use in foreign legal proceedings. 28 U.S.C. § 1782. The "scope of assistance federal courts could provide for foreign proceedings" under § 1782 has been "substantially broadened" over time. *In re Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007) (quoting *Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247-48 (2004)).

To obtain discovery under § 1782, an applicant must first meet the statute's requirements to show: (i) the person from whom discovery is sought resides or is found within the District; (ii) the request seeks evidence, whether the "testimony or statement" of a person or the production of a "document or other thing"; (iii) the discovery is "for use" in a proceeding before a foreign or international tribunal, "including criminal investigations conducted before formal accusation"; and (iv) the applicant is an interested person. 28 U.S.C. § 1782; *Application of Consorcio*

5

*Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014).

Once the statutory prerequisites are met, courts consider four *discretionary* factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004): (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (iv) whether the discovery sought is "unduly intrusive or burdensome[.]" *Id.* at 264-65.

District courts have broad discretion in granting judicial assistance to foreign tribunals to obtain evidence for use in a foreign proceeding. *In re Clerici*, 481 F.3d at 1324; *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1301 (S.D. Fla. 2012) ("Congress has intentionally granted the district courts broad discretion in granting judicial assistance under § 1782.").

This Application easily satisfies § 1782's statutory prerequisites and all four discretionary *Intel* factors, so that a grant of the Application is warranted.

**B.   *The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782***

**(1)   *Socorro Resides in, or is Otherwise Found in, the District***

The first element is easily met as Socorro resides or is otherwise found in this District. Public records reveal that Socorro owns a home in Miami-Dade County. *See* Exhibit E. Additionally, as the registered agent of a company, Socorro confirmed in a filing with Florida's Secretary of State on March 10, 2023, that his address, although different than his home address,

6

is in Miami-Dade County. A copy of the public filing, obtained from sunbiz.org on March 17, 2023, is attached as Exhibit F. What's more, Socorro maintains a web page promoting his investment advising business where he describes himself as a "resident of Doral, FL." A copy of that webpage, https://www.hidalgorafaelsocorro.com/, accessed on March 21, 2023, is attached as Exhibit G.

Accordingly, this Application satisfies the prerequisite that the Discovery Target resides or can be found in the Southern District of Florida. *See, e.g., In re Novoship (UK) Ltd.*, No. 20-60876-MC, 2020 WL 3286308, at *3 (S.D. Fla. June 18, 2020) (it is sufficient that the "persons from whom discovery [is sought] reside in the Southern District of Florida"); *In re O'Keeffe*, 660 F. App'x 871, 872 (11th Cir. 2016) (upholding § 1782 discovery from a resident of Palm Beach); *In re Request for Int'l Judicial Assistance from the Norrkoping Dist. Court, Sweden*, 219 F. Supp. 3d 1061, 1062 (D. Colo. 2015) (holding "the request indicates that an address in Denver, Colorado is [the discovery target]'s last known address" to satisfy the first statutory requirement of § 1782).

> (2)     *The Request Seeks "Evidence" within the Meaning of 28 U.S.C. § 1782*

This Application seeks specific, targeted documentary and testimonial evidence from Socorro regarding the funds used to purchase the preferred shares in Bantrab and the organization and operation of the G3 scheme. *See* Exhibit A. That sworn testimony and those documents are evidence within the meaning of § 1782. *Cf. Consorcio Ecuatoriano*, 747 F.3d at 1269 (affirming an application that "seeks evidence in the form of document production and deposition testimony" as proper under § 1782); *Novoship*, 2020 WL 3286308, at *3 (subpoenas seeking testimony and production of documents satisfy this requirement).

> (3)    The Evidence Requested is "For Use" in the Guatemala Proceedings,
>         Each of which is a "Foreign Proceeding"

The discovery Bantrab seeks through this Application is for use in the ongoing Guatemala Proceedings where the source of the funds used to purchase preferred shares in Bantrab is at issue. Courts liberally construe this requirement and have "great leniency" in their discretion with respect to its application. *In re Furstenberg Fin. SAS*, No. 16-MC-60266, 2016 WL 10707012, at *5 (S.D. Fla. July 27, 2016), *aff'd sub nom. Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031 (11th Cir. 2017). We will take each element in turn.

First, the "for use" requirement is met where the applicant is, or will be, a party to a foreign proceeding or investigation with procedural rights to submit evidence, without regard as to whether the evidence will ultimately be admissible in the foreign tribunal. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (finding the "for use" statutory requirement met where the applicants were "parties to that [foreign] proceeding," and "retain[ed] the procedural right to submit the requested documents to the magistrate overseeing the investigation"); *see also In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018) (relying on the Second Circuit's decision in *In re Accent Delight Int'l*, 869 F.3d 121 (2d Cir. 2017), and holding that the applicant satisfied the "for use" prong because he "has the practical ability to inject the requested information into the foreign proceeding").

Here, Bantrab is a party in the Guatemala Proceedings. Bantrab joined the case before the Guatemala Criminal Court as "*querellante adhesivo*," the "Civil Party,"[4] and is an aggrieved

---

[4] Code of Penal Procedure of Guatemala, Decree Number 51-92, Article 116.- Civil Party. (Amended by Article 9 of Decree 32-96, Article 12 of Decree 103-96 and Article 15 of Decree 79-97, all of the Congress of the Republic) ("In crimes susceptible of public action, the legally

party[5] in the case before the Guatemala Forfeiture Court. Further, under Guatemala law, Bantrab has the right to submit evidence to the prosecutors and help the concurrent investigations in each case. Thus, Bantrab can use the evidence obtained here in the Guatemala Proceedings.

Second, the Guatemala Proceedings are, very certainly, the kind of "foreign proceedings" contemplated by § 1782 and those Guatemalan Proceedings are well underway. The matter before the Guatemalan Criminal Court is the adjudication of the charges of (1) fraud, (2) conspiracy, and (3) unlawful association that the SIB brought against Socorro and the G3. The matter before the Forfeiture Court, whose objective it is to recuperate the goods, gains, products, and fruits generated from illicit or criminal activities, relates to the source of the $20 million DHK used to purchase preferred stocks in Bantrab.

Cases before foreign courts, like the criminal and forfeiture cases at issue here, are precisely the "proceedings" which § 1782 was created to support. *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2087 (2022) (A foreign court, quasi-judicial body, or other governmental adjudicatory body following the practices and procedures of a foreign country and

---

capable injured party or its representative or guardian in the case of minors or incapable persons, or the tax administration in matters under its jurisdiction, may initiate criminal prosecution or adhere to that already initiated by the Public Prosecutor's Office.

. . .

The civil party may always cooperate with and assist the prosecutor in the investigation of the facts. For this purpose, it may request, when it considers appropriate, the practice and receipt of preliminary evidence as well as any other procedure provided for in this Code. He/she shall make his/her requests orally or by simple letter addressed to the prosecutor who shall consider them and act accordingly.").

[5] Code of Penal Procedure of Guatemala, Decree Number 51-92, Article 117.- Aggrieved party. (Amended by Article 7 of Decree 18-2010 of the Congress of the Republic):
"This Code defines the aggrieved party as . . .
    3. The representatives of a company for the crimes committed against it and to the partners with respect to those committed by those who direct, administer or control it . . . ."

is a foreign tribunal conducting "proceedings" under § 1782); *Consorcio Ecuatoriano*, 747 F.3d at 1269 (noting that Congress broadened § 1782 several times, including in 1964 when Congress amended the statute "in order to ensure that assistance was not confined to proceedings before conventional courts, but rather extended to administrative and quasi-judicial proceedings.").

      *(4)     Bantrab is an "Interested Person"*

Bantrab is an "interested person" under the statute because it joined the case before the Criminal Court as a "*querellante adhesivo*" and aggrieved party. In the proceedings before the Forfeiture Court, Bantrab is also an interested party because it issued the preferred shares and continues to account for interest and dividends to the shareholder. In *Intel*, the Supreme Court rejected the argument that only litigants (but not criminal complainants) can be "interested person[s]" under § 1782 and found that a complainant who "has a significant role in the [investigation] process" and possesses "participation rights," including "the right to submit information" during the investigation, was an "interested person." 542 U.S. at 256-57. While the facts of *Intel* involved an antitrust investigation conducted by the European Commission, this Court has applied its holding in the context of a criminal investigation, concluding that "[w]hen criminal actions are commenced in which Applicants are complainants," as is the case here, "they would possess these 'participation rights' upon which the Court relied in *Intel* to determine the applicants in that case were 'interested persons.'" *Furstenberg*, 2016 WL 10707012, at *4.

Accordingly, because Bantrab is a party in the Guatemala Proceedings (in addition to being the victim), it qualifies as an "interested person" and this statutory requirement is met. *See id.* ("[B]ecause Applicants will be parties in a criminal action against JMP, thus possessing the 'participation rights' relied upon by the Supreme Court, this Court finds that Applicants satisfy the 'interested persons' element of Section 1782.").

### C.    All the *Intel* Discretionary Factors Favor Granting the Application

Each *Intel* discretionary factor supports granting the Application.

#### (1)    *The Discovery Target has evaded Guatemalan Courts and Prosecutors*

The first *Intel* factor, that is, whether the party from whom discovery sought is a party in the foreign proceeding, supports § 1782 discovery here. Although this factor normally disfavors § 1782 discovery from a party in a foreign proceeding, the Eleventh Circuit recognized in *In re Clerici* that this factor does not excuse the party when the party has left the jurisdiction of the foreign court and that foreign court cannot enforce its orders directly while the evading party is in the United States. 481 F.3d 1324, 1334-35.

Here, even though Socorro and his company DHK are named parties in the Guatemala Proceedings, Socorro has so far failed to appear before Guatemalan courts to give evidence. In fact, as in *In re Clerici*, Socorro has left the jurisdiction of the foreign court. *See id.* Socorro left Guatemala and has been out of the reach of Guatemala courts since 2016. Socorro resides, or at the very least is found, in this District. Accordingly, the evidence that Socorro has in his possession not only "may be unobtainable" without § 1782 discovery, but most likely can never be obtained without this discovery, thus weighing in favor of granting this Application. *Intel*, 542 U.S. at 264; *see also In re Clerici*, 481 F.3d at 1335.

#### (2)    *The Nature and Receptivity of the Foreign Tribunal to the Requested Discovery*

This factor weighs against granting a § 1782 application only if there is "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re MTS Bank*, No. 17-21545-MC, 2017 WL 3276879, at *8 (S.D. Fla. Aug. 1, 2017) (quoting *In re Kreke Immobilien KG*, No. 13 Misc. 110, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013)); *accord*

*Mesa*, 878 F. Supp. 2d at 1304 (this factor "weighs against judicial assistance when the opposing party shows that the foreign tribunal actively opposes the discovery").

Here, not only is there no suggestion that the Guatemalan courts would reject evidence gathered via § 1782, but any evidence obtained through this Application will be used in the pending Guatemala Proceedings, and Guatemalan courts will be receptive to such evidence. *C.f. In re N. Am. Potash, Inc.*, No. 12-20637-CV, 2012 WL 12877816, at *8 (S.D. Fla. Nov. 19, 2012) ("[F]or purposes of § 1782, district courts should consider neither discoverability or admissibility in the foreign proceeding."), *report and recommendation adopted*, No. 12-20637, 2013 WL 12113190 (S.D. Fla. Mar. 13, 2013). In fact, other courts have already determined that there a Guatemalan court will receive evidence obtained through § 1782 for use in a Guatemalan proceeding. *See e.g.*, *In re Multiflora Int'l Ltd.*, No. 20-mc-80193-DMR, 2021 WL 2662122, at *4 (N.D. Cal. June 29, 2021) (finding that the second Intel factor weighs in favor of granting a § 1782 application when there is no evidence that a Guatemalan court would reject judicial assistance from the court).

     (3)     *Bantrab is Not Circumventing any Foreign Law Proof-gathering Restrictions*

Bantrab seeks this discovery in good faith and is not "actively seeking to circumvent the foreign tribunal's discovery methods and restrictions," which is what would be required for this factor to "counsel against section 1782 relief." *Mesa*, 878 F. Supp. 2d at 1305. Under Guatemala law, a "*querellante adhesivo*" is always allowed to collaborate and assist prosecutors in investigations and in obtaining evidence against the alleged perpetrators. There are no restrictions on a victim's or "*querellante adhesivo 's*" ability to lawfully gather evidence that it may wish to provide to prosecutors to aid them in their investigation, nor would it make sense for such restrictions to exist.

(4)     *The Discovery Requests are Not Unduly Intrusive or Burdensome*

Finally, Bantrab's discovery requests are neither unduly intrusive nor burdensome. To satisfy this requirement, the discovery requests must "appear to be narrowly tailored to the issues presented in the criminal investigation underway in [the foreign country]." *In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *13 (S.D. Fla. Jan. 19, 2011). Here, the discovery requests are appropriately tailored to capture evidence to assist in the ongoing Guatemala Proceedings. The proposed subpoena *duces tecum* seeks a discrete universe of documents relating to the Guatemala Proceedings. Specifically, the requests seek Socorro's testimony and documents in his possession, custody, or control, related to the origin of the $20 million used to purchase preferred shares in Bantrab and further the illicit agreement between the G3 and Socorro, and other documents closely related to that scheme. Thus, the requests are not "unduly intrusive or burdensome." *See Inversiones*, 2011 WL 181311, at *13 (allowing discovery under 1782 absent "specific showing" of burden or intrusive nature of request by respondent); *Mesa*, 878 F. Supp. 2d at 1306 ("no undue burden exists because the discovery requests being compelled through this Order are sufficiently tailored.").

In summary, this application satisfies all the § 1782 statutory requirements, and all four of the discretionary *Intel* factors militate in favor of granting it.

**D.     *Under this Court's Local Rules, 28 U.S.C. § 1782 Applications Are Typically Filed Ex Parte and Restricted from Public View***

As a general matter, applications for discovery under § 1782 are filed *ex parte*. *See In re Braga*, 272 F.R.D. 621, 625 (S.D. Fla. 2011) ("most § 1782 applications (at least in [the Southern District of Florida] are filed and decided *ex parte*"); *see also In re Clerici*, 481 F.3d at

13

1333 (affirming § 1782 *ex parte* order); *In re Trinidad & Tobago,* 848 F.2d 1151 (11th Cir. 1988) (affirming §1782 *ex parte* order), *abrogated on other grounds by, Intel,* 542 U.S. 241. In this District, the default rule is that *ex parte* matters proceed in a manner similar to those filed under seal. *See* S. D. Fla. L. R. 5.4(d) ("unless the Court directs otherwise the ex-parte filing will be restricted from public view and the docket text appearing on the public docket will reflect only that a restricted filing has been made.").

The Discovery Target's due process and Rule 45 concerns can be adequately addressed and protected once the application is granted. *Gushlak v. Gushlak,* 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon or improper for district courts to grant applications made pursuant to § 1782 ex parte. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."); *see also In re Clerici,* 481 F.3d at 1336 ("Once discovery is authorized under § 1782, the federal discovery rules, Fed. R. Civ. P. 26-36, contain the relevant practices and procedures for the taking of testimony and production of documents.").

Here, important reasons exist for proceeding *ex parte.* The notorious and public legal proceedings against Socorro and DHK, and the alleged illicit source of the funds used to invest in Bantrab, have caused Bantrab severe reputational and economic damage. At the time the information regarding the Guatemala Proceedings first became public in Guatemala, it created great uncertainty and unease among the bank's clients and produced a multi-million-dollar outflow of deposits jeopardizing the Bank's operations and the resulting payment of dividends (which are not guaranteed) to Bantrab's common shareholders, the workers of Guatemala.

Accordingly, the Court's consideration and grant of the Application should proceed *ex parte* and it should be treated as if under seal. If the Court determines that the confidential

14

information contained here should be secured in a different manner, Bantrab requests that, prior to the publication of any such materials on the docket of this Court, it be given the opportunity to file a motion to place the documents under seal and provide redacted versions of them. A proposed order is attached as Exhibit H.

## VI.   CONCLUSION

For the foregoing reasons, Bantrab respectfully petitions this Court to (1) enter the proposed *Ex Parte* Order attached as Exhibit H authorizing issuance of the subpoena, and directing Discovery Target, Hidalgo Socorro, to respond to the subpoena in accordance with the Order, and (2) to keep this matter under seal.

Dated: April 3, 2023                               Respectfully submitted,


**RIVERO MESTRE LLP**
*Attorneys for Banco de los Trabajadores*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Jorge A. Mestre
   JORGE A. MESTRE
   Florida Bar No. 88145
   jmestre@riveromestre.com
   ROBERT J. KUNTZ JR.
   Florida Bar No. 94668
   rkuntz@riveromestre.com
   BRANDON CRUZ
   Florida Bar No. 1040423
   bcruz@riveromestre.com